**U.S. Equal Employment Opportunity Commission**
**New York District Office**

33 Whitehall Street
5th Floor
New York, NY 10004
(212) 336-3620
TDD: 1-800-669-6820
FAX (212) 336-3625
1-800-669-4000

Respondent: NYC POLICE DEPARTMENT
EEOC Charge No.: 520-2007-02125
FEPA Charge No.:

April 3, 2007

James Caffrey, Esq.
BAMUNDO, ZWAL & SCHERMERHORN, LLP
111 John Street, Suite 1100
New York, NY 10036

Dear Mr. Caffrey:

This is to acknowledge receipt of the above-numbered charge of employment discrimination against the above-named respondent. Please use the "EEOC Charge No." listed above whenever you call us about this charge. The information provided indicates that the charge is subject to:

[ X ]   Title VII of the Civil Rights Act of 1964 (Title VII)

[  ]    The Age Discrimination in Employment Act (ADEA)

[  ]    The Americans with Disabilities Act (ADA)

[  ]    The Equal Pay Act (EPA)

You need do nothing further at this time. We will contact you when we need more information or assistance. A copy of the charge or notice of the charge will be sent to the respondent within 10 days of our receipt of the charge as required by our procedures.

[X]     Please be aware that we will send a copy of the charge to the agency listed below as required by our procedures. If the charge is processed by that agency, it may require the charge to be signed before a notary public or an agency official. Then the agency will investigate and resolve the charge under their statute. If this occurs, section 1601.76 of EEOC's regulations entitles you to ask us to perform a Substantial Weight Review of the agency's final finding. To obtain this review, a written request must be made to this office within 15 days of receipt of the agency's final finding in the case. Otherwise, we will generally adopt the agency's finding as EEOC's.

New York State Division Of Human Rights
Federal Contract Unit
One Fordham Plaza, 4 Fl.
Bronx, NY 10458

Your client should notify this office of any change in address or of any prolonged absence from home. Failure to cooperate in this matter may lead to dismissal of the charge.

Sincerely,

Patricia M. Araujo
Investigator
(212) 336-3681

Enclosure(s)

cc:   Sharon Gandarilla
      2 Forest Road
      Wallkill, NY 12589

| I. CHARGE OF DISCRIMINATION | III. AGENCY | IV. CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before Completing this form. <br> II. | ☐ FEPA <br> ☐ EEOC | 520-2007-02125 |

_____ and EEOC
State or Local Agency, if any

| NAME (Indicate Mr., Ms., Mrs.,) | HOME TELEPHONE (Include Area Code) |
|---|---|
| MRS. SHARON GANDARILLA | 845-564-8873 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 2 FOREST ROAD, WALKILL, NY 12589 | | 3/20/74 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (if more than one list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TLEPHONE (Indicate Area Code) |
|---|---|---|
| CITY OF NY, NYPD | 40,000 + | 646-610-5000 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 1 POLICE PLAZA, NY, NY 10038 | | NEW YORK |

| NAME | TLEPHONE NUMBER (Indicate Area Code) |
|---|---|
| ALBERTO SANCHEZ, CAPTAIN | 718-520-6777 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| c/o NYPD, 1 POLICE PLAZA, NY, NY 10038 | | NEW YORK |

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER (Specify)

DATE DISCRIMINATION TOOK PLACE
EARLIEST September 2003    LATEST March 26, 200_

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

SEE RIDER ATTACHED

RECEIVED MAR 2 8 2007 EEOC-NYDO-CRTIU

ALLA GNIP
Commissioner of Deeds
City of New York, No.: 2-12885
Certificate Filed in New York County
Commission Expires on: September 1, 2008

I want this charge filed with both the EEOC and the State or Local Agency, if any, I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY – (When necessary for State and Local Requirements) _Alla Gnip_

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

SIGNATURE OF COMPLAINANT
_Sharon Gandarilla_

x _Sharon Gandarilla_
Date    Charging Party (Signature)

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(Day, month, and year)

EEOC FORM 5 (REV. 3/01)

1. I am a New York City Police Officer and was appointed/hired on June 30, 1998. At the time the violations commenced, I was assigned to the 23 Precinct located at 162 East 102 Street, New York, New York. I am presently assigned to the Police Cadet Corp, located within the Police Academy at 235 East 20th Street, NY, NY.

2. My assignment as of September 2003 in the 23 precinct was Crime Analysis. Once Captain Alberto Sanchez was transferred to the precinct, my assignment changed to include the function of Highway Safety Officer, which is an administrative assignment typically requiring performance of a duty chart of 0600x0235 Monday through Friday.

3. In September 2003, Capt. Sanchez was transferred to the 23 precinct as its executive officer (second in command) under Deputy Inspector Parno.

4. In February 2004 upon my return to duty after maternity leave, Captain Sanchez continued to make persistent romantic and sexual advances towards me. My assignment within the precinct fell directly under the command of Captain Sanchez.

5. In 2004, I relented and became involved with Captain Sanchez in a sexual relationship.

6. This relationship interfered with the performance of my duties, as Captain Sanchez began to display increasingly jealous behavior towards me to the point where he needed to know my exact location at all hours while I was working.

7. Sanchez' conduct, which fell well outside of the normal duties of an executive officer included the following:
    a. Constantly making sexual advances towards my while on duty and in the station house;
    b. Forcing me to work physically inside of his office (despite the existence of my highway safety and crime analysis office);
    c. Ordering me to report to the station house to perform tours of duty with him, including midnight tours;
    d. Constantly calling me on my personal cellular telephone to direct me to report for over time tours;
    e. Directing his subordinates to locate me while I was in the station house.

8. All of the above subjected me to the jealous reactions of my colleagues and supervisors which included:

    a. Alienation
    b. Destruction/Vandalism of my assigned locker

    c.    Comments made by supervisors regarding the size of my breasts and the clothing I was wearing by Sgt. Troisi;
    d.    A generally hostile environment

9. I was confronted by the Precinct Commander about my relationship with Captain Sanchez. Captain Sanchez directed me to conceal our relationship. Based upon the inappropriate nature of our relationship, Captain Sanchez was transferred to another command in September 2004.

10. Until I complained about my locker being vandalized and the comments made to me by Sergeant Troisi I had always received above standard evaluations and except for a minor administrative infraction, had never been formally disciplined by my employer. Upon receiving a formal complaint by me for the comments made by Sergeant Troisi, I received a Command Discipline by the Internal Affairs Bureau for "failure to safeguard" my locker. I accepted these charges in order to avoid revealing relationship with Sanchez.

11. Upon receipt of these charges, I requested a transfer and terminated my relationship with Captain Sanchez.

12. Captain Sanchez, while assigned to the 20 precinct, would come to 23 precinct, while on duty and in his official capacity and persisted in requesting that I resume my relationship with him.

13. After requesting a transfer:

    a.    I was ordered to report for assignments outside of the 23 precinct, which was a complete change of my normal assignment;

14. The NYPD OEEO opened a complaint based upon the comments made by Sgt. Troisis and subjected me to interrogation regarding my relationship with Sanchez.

15. In December 2004 Sanchez was transferred back to the 23 precinct and was almost immediately transferred to the Police Academy Police Cadet Corps as its Commanding Officer in January 2005.

16. During the period prior to his transfer, Sanchez would order me into his office and grab me, attempting to make sexual advances against my will.

17. Subsequent to Captain Sanchez' transfer in January 2005, while I was a student at John Jay College, Sanchez would follow me to the college while he was on duty. He would approach me there and pressure me to transfer to his new unit and attempted to renew the relationship.

18. Captain Sanchez called my estranged Husband (who is a sergeant on the NYPD) and advised that he was transferring me to PCC for "noble" reasons stating that there was no romantic relationship involved.

19. I agreed to the transfer to remove myself from the hostile environment which now existed for me in the 23 precinct. I agreed to a temporary transfer in March 2005.

20. By May 2005, Captain Sanchez began prying into my personal life, acting jealous, and calling me at home.

21. In January 2006 Sanchez told me that he was a police captain and had a lot of people who were watching me and reporting to him where she was on her personal time.

22. January 2006 after a visit to my new office by the Commander of the 23 Precinct, Sanchez accused me of sleeping with my former Commanding Officer, threatened to kill me and physically assaulted me in his office.

23. In May 2006, I terminated my relationship with Captain Sanchez.

24. I then requested a transfer in writing, which was denied by Sanchez.

25. In July 2006 at his insistence I met Sanchez off duty at a restaurant (Paquinto's, Bronx, NY) and again requested a transfer, which he denied. Upon his denial, I left the restaurant was followed by him. He assaulted me outside of the restaurant and forced me into his vehicle. The NYPD responded to this incident, and the patrol officers were met by Sanchez who identified himself as a Captain and directed the officers to resume patrol.

26. On Sept. 1 2006, at Gonzalez Restaurant in the Village with friends for a retirement party Sanchez arrived and accused me of sleeping with one of the officers attending the party. (PO. Galindo who is also assigned to the Police Cadet Corps.)

27. He then forced me to leave the restaurant and began physically assaulting me outside. Upon information and belief, the NYPD Internal Affairs Bureau witnessed and/or filmed this incident as part of an ongoing investigation of Captain Sanchez.

   a. IAD took no police action, nor did the NYPD make any attempt to extract me from the situation which was worsening for me due to the actions and behavior of Sanchez.
   b. I was treated for my injuries at the Hudson Valley Medical Center
   c. PO Angel Galindo and PAA Silvio Cosio observed my bruises and black eyes
   d. When I reported for work Sanchez ordered me to go home stating that he would "cover" for me in order to avoid exposing my bruises.

28. The on-going physical abuse I was enduring while at work was known to other members of the NYPD. In fact, a Lieutenant from the 23 precinct published the abusive behavior on the NYPD rant website.

29. Sanchez discovered this publication, confronted me, and told me I can never leave his unit, he owns me, this is a bosses job and he loves me.

30. November 2006, I requested another supervisor in my unit (Lieutenant Lee) to get my transfer request signed by Sanchez. Lt Lee and Sergeants assigned to my unit confronted Sanchez and advised him to grant my transfer. He refused this advice.

31. IAD now opened an investigation into the Police cadet Corps based upon Sanchez' misuse of time and his behavior.

32. On December 1, 2006, while out with fellow officers Sanchez show up and demands that he meet her in a Bronx parking lot to "talk". I agreed to this meeting. Once in the Bronx, he convinced me to exit my car and immediately began assaulted me.

33. Upon reporting this incident, I was transported to Bellevue Hospital by the NYPD Internal Affairs Bureau. IAB subsequently arrested Sanchez for this incident.

34. After the December 1, 2006 incident, I started being harassed at my job by a newly assigned Lieutenant Sala, who is a friend of Sanchez.

35. More recently, Lieutenant Sala has instructed all of the Sergeants in my unit to give me a hard time and not to leave me unsupervised at all. The common practice for my unit is that when there is no supervisor present - which is a common occurrence especially at the end of our tours - we have a supervisor from another unit within the Police Academy verify that we have signed out. I have now been singled out for treatment which includes forcing me to use vacation time when the Sergeants must leave before me, or in the alternative reporting to the 13th Precinct to perform the remainder of my tours.

36. Pursuant to Lt. Sala's orders, I am now the only officer in my unit being forced to report for work at a set time. All other officers assigned continue to be able to report for work on a flex time schedule except for me.

37. There are pending criminal cases in the Bronx and Manhattan District Attorney's Offices based upon the assaults upon me.

38. My transfer requests continue to be denied and I am advised that my most recent performance evaluation is substantially lower than all of those I have received since becoming a New York City Police Officer.

38.     As set forth above, my rights under Title VII have been violated inasmuch as I have been subjected to a hostile work place, I have been retaliated against based upon the complaint filed by the District Attorney's Offices as well as my requests for transfer and complaints made regarding my situation to supervisors within the NYPD and the NYPD's Office of Equal Employment Opportunity. Furthermore, the very basis for my transfer to his unit and Captain Sanchez' subsequent and continued refusal to transfer me was Sanchez' attempt to maintain a sexual relationship with me and my refusal to do so.

39. Upon information and belief the NYPD Administrative investigation with the Office of Equal Employment Opportunity (OEEO) related to my complaints is still pending.