USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: AUG 1 5 2012

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

SHARON GANDARILLA,

Plaintiff,

-v-

No. 07 Civ. 6909 (LTS)

ALBERTO SANCHEZ and
THE CITY OF NEW YORK,

Defendants.
-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

Plaintiff Sharon Gandarilla ("Plaintiff"), a former police officer with the New York City Police Department ("NYPD"), brings this action against her former superior officer Alberto Sanchez ("Sanchez") and the City of New York ("the City"), asserting claims arising from Sanchez's alleged sexual harassment and physical abuse of Plaintiff. Specifically, Plaintiff brings: (1) hostile work environment claims against the City pursuant to Title VII (42 U.S.C. § 2000 et seq.), the New York State Human Rights Law (N.Y. Exec. Law § 296 et. seq.) ("NYSHRL"), and the New York City Human Rights Law (New York City Administrative Code § 8-107) ("NYCHRL"); (2) retaliation claims against the City pursuant to Title VII, the NYSHRL, and the NYCHRL; (3) a state law claim of negligent hiring, retention, and supervision against the City; (4) state law assault and battery claims against Sanchez, as well as against the City based on the doctrine of respondeat superior; (5) claims against Sanchez, pursuant to the NYSHRL and NYCHRL, for aiding and abetting the creation of a hostile work environment; (6) a state law claim against Sanchez for false imprisonment; and (7) state law claims against Sanchez for intentional and negligent infliction of emotional distress. The City

has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, the City's motion is granted in part and denied in part.

## BACKGROUND

The following facts are either uncontested or taken in the light most favorable to Plaintiff. Sanchez was hired by the NYPD on January 13, 1992. (Plaintiff's Exh. X, at 8.) Plaintiff joined the NYPD on June 30, 1998. (City's Exh. A, at 55-56.) In February 2004, Plaintiff and Sanchez first met, while they were assigned to the 23th Precinct. (Plaintiff's Exh. C, at 40-42.) Sanchez held the rank of lieutenant at that time. (Id.) Sanchez began pressuring Plaintiff to begin a sexual relationship, repeatedly calling Plaintiff while on and off duty. (Id.) Plaintiff and Sanchez begin a consensual sexual relationship in August 2004. (Id. at 42.) Plaintiff began that relationship solely due to the pressure Sanchez placed upon her. (Id. at 43.) In September 2004, Sanchez was transferred to a different precinct. (City's Exh. A, at 245-46.) Plaintiff applied for a transfer to the Police Academy Cadet Corps in December 2004. (Id. at 249.)

On December 3, 2004, Police Officer Yvette Camarena filed a complaint with the NYPD Office of Equal Employment Opportunity, alleging sexual harassment by Sanchez. (Plaintiff's Exh. G, at ¶¶ 51-53.) Camarena's complaint alleges facts similar to those alleged in the instant case, notably: that Sanchez repeatedly made unwanted sexual advances; used rank to ensure that Camarena worked the same shifts and in close proximity to Sanchez; and used rank to retaliate against Camarena for refusing to acquiesce to Sanchez's sexual overtures. (Id.)

In January 2005, Sanchez became the Commanding Officer of the Police Academy Cadet Corps. (City's Exh. A, at 249.) Plaintiff states that she had no knowledge of

Sanchez's impending transfer when she applied for her own transfer. (Plaintiff's Exh. C, at 37-39.)

On March 17, 2005, Officer Camarena filed an EEOC complaint against Sanchez. (Plaintiff's Exh. G at ¶¶ 60-61.) On August 18, 2005, Camarena filed an amended EEOC complaint. (Id.) On November 17, 2005, the EEOC sent Officer Camarena and the NYPD a Notice of Right to Sue. (Id. at 38.) Camarena filed suit in federal court against the City and Sanchez on February 17, 2006. (Id. at 1.)

In May 2006, Plaintiff traveled with Sanchez to Florida. (City's Exh. A, at 44.) During this trip, Sanchez physically struck Plaintiff. (Plaintiff's Exh. C, at 397-99, 500.) Upon their return, Plaintiff indicated that she wished to end their relationship. (Id.) In June 2006, Sanchez struck Plaintiff again. (Id. at 140.) In that same month, Plaintiff asked a fellow officer, Police Officer Galindo, to take transfer paperwork to headquarters on Plaintiff's behalf. (Plaintiff's Exh. I, at 101-04.) Before Officer Galindo left the Cadet Corps for headquarters, Sanchez stopped Officer Galindo and destroyed Plaintiff's transfer paperwork. (Id.) Plaintiff has proffered a psychological evaluation that posits a number of reasons why she acquiesced in the continuation of her relationship with Sanchez notwithstanding violence and other negative factors. (See Plaintiff's Exh. CC.)

In August 2006, Sanchez and Plaintiff met at a restaurant in the Bronx. (Plaintiff's Exh. C, at 143-45.) During the course of that meeting, Plaintiff attempted to leave, at which point Sanchez began a physical altercation which culminated in Sanchez head-butting Plaintiff and giving her a bloody lip. (Id.) A third party reported Sanchez's violence to the police. (Id.) Four NYPD officers responded. (Id.) Sanchez displayed his Captain badge to the officers, stated that he was arguing with his wife, and the officers left. (Id.) During this period,

Sanchez would permit Plaintiff to leave work early, but would sign Plaintiff out at a later time, resulting in Plaintiff receiving income for hours that she did not actually work. (Id. at 25.) Sanchez told Plaintiff that this was intended as compensation for Plaintiff's abuse at his hands. (Id. at 26.)

On September 1, 2006, Sanchez, Plaintiff, and a number of other officers in their unit went to a restaurant after work to celebrate a coworker's retirement. (Plaintiff's Exh. E, at 15.) Officer Galindo took photos of the group with a camera. (Plaintiff's Exh. I, at 26.) Sanchez, jealous of Plaintiff's interaction with another male officer, grabbed Plaintiff, took her outside, and beat her in a car near the campus of New York University. (Plaintiff's Exh. E, at 15-16.) A New York University security guard witnessed this incident and contacted the NYPD. (Id. at 16.) Other third parties also called 911; one such call transcript states that Sanchez is "beating the crap" out of Plaintiff, that "he's really going at her," and that "the man (Sanchez) told the woman that she was 'going to die.'" (Plaintiff's Exh. U.) Two 911 callers identified the license plate of the car Sanchez and Plaintiff were in. (Id.) At some point after this incident but before his arrest, Sanchez ordered Officer Galindo to dispose of the camera with which Galindo had taken photos of Sanchez and Plaintiff together that day. (Plaintiff's Exh. I, at 26-29.) Galindo complied. (Id.) Sanchez was eventually arrested in December 2006 and convicted of assault on the basis of this incident. (Plaintiff's Exh. F.)

On October 5, 2006, Sanchez became upset and jealous upon learning that Plaintiff was assigned to go on a detail with another male officer. (Plaintiff's Exh. C, at 35.) Upon Plaintiff's return, Sanchez accused Plaintiff of sleeping with the other officer, grabbed her by the hair, and led her down the hall and through the men's locker room into a storage room, where he assaulted her. (Id.)

On multiple occasions prior to November 2006, Sanchez forced Plaintiff to perform sexual favors while on duty at the Academy. (Id. at 258-59.) On one occasion between October 6 and November 13, Sanchez placed Plaintiff on duty as his driver. (Id. at 36-37.) After returning from a trip, Sanchez told Plaintiff he wanted to have sex in his office. (Id.) Plaintiff refused. (Id.) Sanchez retaliated by ordering Plaintiff to wear a uniform (which was not generally required of Cadet Corps officers), and by ordering a Sergeant to deny Plaintiff's requests for leaves of absences. (Id.) On December 1, 2006, Sanchez beat Plaintiff again, an encounter which left bruising still visible two days later, on December 3, 2006, when Plaintiff sought medical treatment at Bellevue Hospital. (Id. at 114-118; Plaintiff's Exh. AA.) Plaintiff reported this beating to Internal Affairs, which led to Sanchez's arrest. (Plaintiff's Exh. E.)

In February 2007, Lieutenant Sala, Plaintiff's superior officer, changed Plaintiff's status from limited duty to restricted duty, without following the proper procedure of the NYPD District Sergeant for approving such a change. (Plaintiff's Exh. C, 414-19.) Restricted duty officers cannot earn overtime. (Id.)

In December 2007, the NYPD issued disciplinary charges against Plaintiff alleging theft of time, based on Sanchez's signing out of Plaintiff. (Id. at 203.) Plaintiff retired from the NYPD prior to the adjudication of those charges, on February 25, 2008. (Id.)

Sanchez was convicted of criminal assault on August 20, 2007, on the basis of the September 1, 2006 incident. (Plaintiff's Exh. F.) Nearly three years later, on May 17, 2010, the disciplinary charges brought against Sanchez by the NYPD were adjudicated. (Plaintiff's Exh. X.) On November 30, 2010, Administrative Law Judge Robert W. Vinal found Sanchez guilty of three of the five charges and specifications brought by the NYPD, and recommended dismissal. (Id.) On February 1, 2011, NYPD Police Commissioner Raymond W. Kelly reversed

Vinal's recommendation of dismissal, and permitted Sanchez to retire with benefits. (Plaintiff's Exh. Y.)

## DISCUSSION

Summary judgment is to be granted in favor of a moving party if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (the moving party bears the burden of establishing that there is no genuine issue of material fact). A fact is considered material "it might affect the outcome of the suit under the governing law," and an issue of fact is a genuine one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 104 (2d Cir. 2011) (quoting Anderson, 477 U.S. at 248). The Second Circuit has explained, however, that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts" and "may not rely on conclusory allegations or unsubstantiated speculation." DeFabio v. East Hampton Union Free School Dist., 623 F.3d 71, 81 (2d Cir. 2010) (quoting Jeffreys v. City of N.Y., 426 F.3d 549, 554 (2d Cir. 2005)). Rather, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. Duch v. Jakubek, 588 F.3d 757, 764 n.2 (2d Cir. 2009); see also Fed. R. Civ. P. 56(e)(2). The trial court's task at the summary judgment motion stage of the litigation is limited to discerning whether there are any genuine issues of material fact to be tried, and does not extend to deciding any such issues. Gallo v. Prudential Residential Services, Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

The City seeks summary judgment dismissing a number of aspects of Plaintiff's claims, some on timeliness grounds and some on the merits. With respect to timeliness, the City

argues: (1) that Plaintiff's Title VII claims are untimely to the extent they are premised on events that occurred more than 300 days before Plaintiff filed her EEOC charge; (2) that Plaintiff's state and local antidiscrimination law claims are barred to the extent they are premised on events that occurred more than three years before this action was filed; and (3) that Plaintiff's state law assault and battery claim relating to the September 2006 beating must be dismissed because Plaintiff failed to file a timely notice of claim regarding that incident.

The City also seeks dismissal of Plaintiff's Title VII and state hostile work environment claims on the merits, arguing that it is entitled to judgment as a matter of law under the so-called Faragher/Ellerth doctrine. As to Plaintiff's retaliation claim, the City asserts that it is entitled to judgment in its favor because Plaintiff has not proffered evidence sufficient to make out a prima facie case. The City also seeks dismissal of Plaintiff's negligent hiring and supervision claims, arguing that it had no notice of Sanchez's propensity for the conduct that caused Plaintiff's alleged injuries.

Timeliness of Claims

In its moving papers, the City asserts that certain of Plantiff's causes of action are time-barred, arguing: (1) that Title VII's timely filing provisions bar Plaintiff from recovering under Title VII for any violations that occurred before June 2, 2006; (2) that the three-year statute of limitations for claims brought pursuant to the NYSHRL and NYCHRL bars Plaintiff from recovering under those statutes for any violations that occurred before August 1, 2004; and (3) that the Notice of Claim requirements of New York General Municipal Law § 50-e bar Plaintiff from recovering against the City under state law for any assault and battery that occurred before November 23, 2006.

Title VII Claim

In New York, Title VII claims are time-barred if a plaintiff does not file a charge with the appropriate administrative agency within 300 days of the occurrence of the alleged discriminatory practice. 42 U.S.C. § 2000e–5(e)(1). The City argues that, because Plaintiff did not file an EEOC complaint with the city until March 28, 2007, Plaintiff's Title VII claims based on events that occurred prior to June 2, 2006 are time-barred. Plaintiff correctly asserts, however, that her hostile work environment claim based on such events is not time-barred.[1]

A hostile work environment "is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002). Thus Plaintiff's hostile work environment claim is timely, so long as Plaintiff filed suit within "300 days of any act that is part of the hostile work environment," even if some of the acts making up the hostile work environment occurred more than 300 days prior to filing. Id. at 117-18. ("It does not matter . . . that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability"). In contrast to hostile work environment claims, claims alleging discrimination based on "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire . . . constitute[] a separate actionable unlawful employment practice. [A plaintiff] can only file a charge to cover discrete acts that occurred within the appropriate time period." Id. at 114.

[1] As Plaintiff's moving papers in opposition to the instant motion only advance a hostile work environment theory, the Court considers Plaintiff to have abandoned any other theory of recovery under Title VII, the NYSHRL and the NYCHRL.

In order to determine whether Plaintiff's Title VII claims based on events prior to June 2, 2006, are barred as untimely, the Court must first examine whether Plaintiff has alleged facts and adduced evidence sufficient to support a prima facie hostile work environment claim, or if, instead, Plaintiff has merely alleged numerous discrete acts of discrimination. When deciding whether conduct constitutes an actionable hostile work environment, a court must look to "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 116 (internal quotations omitted). The Supreme Court has held that a plaintiff stated a viable Title VII hostile work environment claim predicated on sexual harassment when the plaintiff's superior "made repeated demands upon [plaintiff] for sexual favors . . . both during and after business hours . . . and even forcibly raped her on several occasions." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 60 (1986). The Supreme Court later clarified that the conduct in Meritor "merely present[ed] an especially egregious example[] of harassment" which "do[es] not mark the boundary of what is actionable." Harris v. Forklift Sys., Inc., 510 U.S. 17, 22 (1993). The Second Circuit has stated that "[r]equiring an employee to engage in unwanted sex acts is one of the most pernicious and oppressive forms of sexual harassment that can occur in the workplace." Jin v. Metro. Life Ins. Co., 310 F.3d 84, 94 (2d Cir. 2002). Thus relatively few incidents of physical sexual harassment by a supervisor are required to establish a legally actionable hostile work environment. See Redd v. New York Div. of Parole, 678 F.3d 166, 179 (2d Cir. 2012) (evidence that supervisor touched plaintiff's breasts on three occasions sufficient to create triable issue of fact as to existence of hostile work environment).

In the instant case, Plaintiff has proffered evidence indicating that Sanchez: (1) demanded sexual favors from Plaintiff while on duty, (Plaintiff's Exh. C at 238); (2) used supervisory authority to punish Plaintiff if she did not comply with his demands, (id. at 36.); (3) sexually assaulted Plaintiff (id. at 490); and (4) was frequently physically violent towards Plaintiff, inside and outside of the workplace. (Id. at 497-501.) Plaintiff felt humiliated as a result of Sanchez's beatings of her while on duty. (Id. at 28.) Sanchez's violence was occasionally severe enough to bruise Plaintiff. (Plaintiff's Exh. AA.)

These actions are sufficiently frequent, severe, physically threatening, and humiliating to constitute a hostile work environment under Morgan's multi-factor analysis. Because Plaintiff has proffered evidence sufficient to create a genuine issue of material fact as to whether Sanchez in fact committed the alleged actions, and because Plaintiff's EEOC complaint was filed less than 300 days after the end of the alleged hostile work environment, the City's motion for summary judgment dismissing any Title VII claims based on Sanchez's actions prior to June 2, 2006 is denied.

The NYSHRL and NYCHRL

The statute of limitations for claims brought pursuant to the NYSHRL and NYCHRL is three years. Murphy v. Amer. Home Prod. Corp., 58 N.Y.2d 293, 307 (1983); N.Y. C.P.L.R. § 214(2). The continuing violation doctrine of Morgan applies to claims brought under the NYSHRL and NYCHRL. See Cruz v. Coach Stores, Inc., 202 F.3d 560, 565 n.1 (2d Cir. 2000) (citing Leopold v. Baccarat, Inc., 174 F.3d 261, 264 n.1 (2d Cir. 1999) (NYSHRL); Landwehr v. Grey Adver. Inc., 622 N.Y.2d 17, 18 (N.Y. App. Div. 1995) (NYCHRL)); see also Fleming v. Verizon New York, Inc., 419 F. Supp. 2d 455, 465 (S.D.N.Y. 2005). The substantive

standard for a prima facie hostile work environment claim pursuant to the NYSHRL is identical to that under Title VII, Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 609 (2d Cir. 2006), while the NYCHRL standard for such a claim is less demanding. Williams v. New York City Hous. Auth., 61 A.D.3d 62, 66-67 (2009) ("[I]t is clear that interpretations of State or federal provisions worded similarly to [NYCHRL] provisions may be used as aids in interpretation only to the extent that the counterpart provisions are viewed as a floor below which the [NYCHRL] cannot fall, rather than a ceiling above which the local law cannot rise.").

The City argues that, because Plaintiff filed suit on August 1, 2007, any of Plaintiff's claims brought under the NYSHRL and NYCHRL which accrued prior to August 1, 2004, must be dismissed as barred by the applicable statute of limitations. For substantially the reasons explained in connection with the timeliness of Plaintiff's Title VII claim, the Court concludes that Plaintiff's pre-August 2004 claims based on incidents that are alleged to have been part of the hostile work environment arising from sexual pressure from Sanchez are timely. The City's motion for summary judgment dismissing any NYSHRL and NYCHRL claims based on Sanchez's actions prior to August 1, 2004 is therefore denied.

New York General Municipal Law § 50-e

To recover in tort against a New York municipality, a plaintiff must serve a Notice of Claim within 90 days of the accrual of the cause of action. N.Y. Gen. Municipal Law § 50-e. A notice of claim is a condition precedent to the commencement of a negligence action against the city. Glamm v City of Amsterdam, 67 A.D.2d 1056, 1057 (N.Y. App. Div. 1979), aff'd, 49 N.Y.2d 714 (N.Y. 1980). Federal courts entertaining state-law claims against a state's

municipalities are obligated to apply that state's notice-of-claim provision. Felder v. Casey, 487 U.S. 131, 151 (1988).

The City asserts that the Notice of Claim filed by Plaintiff on February 21, 2007, is untimely as to Plaintiff's state law assault and battery claims which accrued prior to November 23, 2006. The City contends that, as a result, Plaintiff's assault and battery claim based on the September 1, 2006, criminal assault must be dismissed as untimely.

This claim accrued when Sanchez assaulted Plaintiff on September 1, 2006. Plaintiff's Notice of Claim was filed 173 days later, on February 21, 2007. Plaintiff's assault and battery cause of action based on events outside the 90-day window preceding February 21, 2007, is therefore barred by Municipal Law § 50-e, and the Court will grant the City's motion for summary judgment as to that claim.[2]

The Faragher/Ellerth Defense

The City moves for summary judgment with regard to Plaintiff's Title VII and NYSHRL hostile work environment claims, arguing that the City is entitled, as a matter of law, to prevail based on the affirmative defense set forth in the companion cases of Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998) and Faragher v. Boca Raton, 524 U.S. 775 (1998) (the "Faragher/Ellerth defense").[3] Because there is a genuine question of material fact as to whether

[2] Plaintiff argues that § 50-e does not bar the claim to the extent it is brought under General Municipal Law § 205-e. The argument is unavailing, first, because the cited statute applies to death or injury claims arising from accidents, and second, because section 205-e claims appear to be subject to the § 50-e claim notice requirement. See N.Y. Gen. Mun. Law § 205-e(1); Huebner v. New York City Transit Authority, 226 A.D.2d 678 (N.Y. App. Div. 1996).

[3] The Faragher/Ellerth defense is not applicable to hostile work environment claims brought pursuant to the NYCHRL. Zakrzewska v. New School, 14 N.Y.3d 469, 479 (N.Y. 2010).

the City meets the threshold requirements of the Faragher/Ellerth defense, summary judgment is denied.

An employer will be held vicariously liable to an employee if a supervisor with immediate (or successively higher) authority over the employee creates an actionable hostile work environment. Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998). A defending employer may raise the Faragher/Ellerth defense to liability or damages only if no tangible employment action was taken by the allegedly victimizing supervisor with respect to the employee. Id. Once an employer has met this threshold, the employer must establish two necessary elements by a preponderance of the evidence: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. Id.

"[A] tangible employment action constitutes a significant change in employment status such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Id. at 761. The Second Circuit has ruled that a supervisor "requiring an employee to engage in unwanted sex acts . . . fits squarely within the definition of 'tangible employment action' that the Supreme Court announced in Faragher and Ellerth." Jin v. Metro. Life Ins. Co., 310 F.3d 84, 94 (2d Cir. 2002). The Second Circuit also held that *any* tangible employment action by a supervisor based on an employee's response to unwanted sexual advances, whether adverse or beneficial, precludes an employer from raising a Faragher/Ellerth defense:

> If a supervisor undertakes or recommends a tangible job action based on a subordinate's response to unwelcome sexual demands, the employer is liable and cannot raise the affirmative defense. The result is the same

> whether the employee rejects the demands and is subjected to an adverse tangible employment action or submits to the demands and consequently obtains a tangible job benefit.

Id. at 94-95.

Plaintiff maintains that her sexual relationship with Sanchez was unwanted, at least from mid-2006, and has proffered evidence that Sanchez would order subordinates to disapprove Plaintiff's requests for leaves of absence if Plaintiff refused to have sex with Sanchez in his office. (Plaintiff's Exh. C, at 36.) Sanchez also destroyed documentation necessary for Plaintiff's requested transfer out of Sanchez's unit. (Plaintiff's Exh. I, at 59-62.) Sanchez permitted Plaintiff to leave work early, but would sign Plaintiff out at a later time, resulting in Plaintiff receiving income for hours Plaintiff did not work. (Plaintiff's Exh. C, at 25.) Sanchez told Plaintiff that this was intended as compensation for Plaintiff's abuse at his hands. (Id. at 26.) This evidence is sufficient to create a genuine question of material fact as to whether Sanchez undertook tangible employment action based on Plaintiff's responses to unwanted sexual advances. The City's motion for summary judgment on the basis of the Faragher/Ellerth defense is therefore denied.

Retaliation

Retaliation claims under Title VII[4] are evaluated under a three-step burden-shifting analysis. Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005). First, the plaintiff must establish a prima facie case of retaliation by showing that: (1) the plaintiff engaged in protected participation or opposition under Title VII; (2) the employer was aware of

[4] The analytic framework governing retaliation claims pursuant to the NYSHRL and the NYCHRL is identical to that under Title VII. Spiegel v. Schulmann, 604 F.3d 72, 80 (2d Cir. 2010). Thus, the Court's analysis applies to all three claims.

this activity; (3) the employer took adverse action against the plaintiff; and (4) a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action. Id. at 173; see also Kessler v. Westchester County Dept. of Soc. Services, 461 F.3d 199, 205-06 (2d Cir. 2006). To establish an adverse action, a plaintiff must show material harm, as "petty slights or minor annoyances that often take place at work and that all employees experience" do not constitute actionable retaliation. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). This harm must be sufficient to dissuade a reasonable employee in the plaintiff's position from making a charge of discrimination. Kessler v. Westchester County Dept. of Soc. Services, 461 F.3d 199, 209-10 (2d Cir. 2006).

If the plaintiff sustains this initial burden, "a presumption of retaliation arises." Jute, 420 F.3d at 173. The defendant must then "articulate a legitimate, non-retaliatory reason for the adverse employment action." Id. If defendant does so, "the presumption of retaliation dissipates and the employee must show that retaliation was a substantial reason for the adverse employment action." Id. A plaintiff can sustain this burden by proving that "a retaliatory motive played a part in the adverse employment actions even if it was not the sole cause[;] if the employer was motivated by retaliatory animus, Title VII is violated even if there were objectively valid grounds for the [adverse employment action]." Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir.1990).

The City argues it is entitled to summary judgment in its favor on Plaintiff's retaliation claims because: (1) Plaintiff has not proffered evidence sufficient to establish that an adverse employment action was taken against Plaintiff; and (2) in the alternative, the City has articulated a legitimate non-retaliatory reason for the adverse action, and Plaintiff has failed to

proffer evidence sufficient to support a finding that the adverse action was in fact motivated, at least in part, by retaliatory animus.

The City's first argument is unsupported by the evidence before the Court. Plaintiff testified that her superior, Lieutenant Sala, placed her on restricted duty status without following established procedures for doing so. (Plaintiff's Exh. C, 414-19.) Officers on restricted status are precluded from working overtime. (Id.) Reclassification to a status that is ineligible for compensation benefits in the form of overtime constitutes the necessary showing of an adverse action. From this evidence, a rational fact-finder could permissibly infer that a reasonable employee in Plaintiff's position could well have been dissuaded from making a charge of discrimination if doing so would result in a loss of opportunity to earn overtime hours and pay. The City's second argument is equally unavailing. The City asserts that Plaintiff's status was only changed to *limited* duty, a position which, according to Plaintiff's testimony, was eligible for overtime. (Id.) As discussed above, however, Plaintiff has proffered evidence that her status was actually changed to *restricted* duty, under which officers are prohibited from earning overtime. (Id.) Accordingly, there is an issue of material fact as to the nature of the change in Plaintiff's status and, therefore, whether the City has even articulated a legitimate, non-retaliatory reason for the alleged adverse employment action.

Negligent Hiring, Supervision, and Retention

Under New York law, "[i]n instances where an employer cannot be held vicariously liable for its employee's torts, the employer can still be held liable under theories of negligent hiring, negligent retention, and negligent supervision." Kenneth R. v. Roman Catholic Diocese of Brooklyn, 229 A.D.2d 159, 161 (N.Y. App. Div. 1997). "A claim for negligent

supervision or retention arises when an employer places an employee in a position to cause foreseeable harm, harm which the injured party most probably would have been spared had the employer taken reasonable care in supervising or retaining the employee." Bouchard v. New York Archdiocese, 719 F. Supp. 2d 255, 261 (S.D.N.Y. 2010) aff'd, 458 F. App'x 37 (2d Cir. 2012). Under New York law, a claim for negligent hiring, supervision or retention, "in addition to the standard elements of negligence," requires "a plaintiff [to] show: (1) that the tortfeasor and the defendant were in an employee-employer relationship; (2) that the employer 'knew or should have known of the employee's propensity for the conduct which caused the injury' prior to the injury's occurrence; and, (3) that the tort was committed on the employer's premises or with the employer's chattels." Ehrens v. Lutheran Church, 385 F.3d 232, 235 (2d Cir. 2004) (citing Kenneth R., 229 A.D.2d at 161; D'Amico v. Christie, 71 N.Y.2d 76, 87-88 (N.Y. 1987)) (internal quotations and citations omitted).[5] The Second Circuit has held that a prima facie showing of the notice element of a negligent retention and supervision claim requires evidence that the employer knew that "[the employee] had [] engaged in, *or been accused of engaging in*, sexual misconduct." Ehrens, 385 F.3d at 235 (emphasis added).

The City does not dispute in its moving papers that Sanchez was an employee of the NYPD, or that at least some of Sanchez's harassment of Plaintiff occurred on NYPD premises. The City argues, however, that Plaintiff has not established that the City had the requisite notice of any propensity on Sanchez's part to commit the harms alleged, and therefore moves for summary judgment on Plaintiff's negligent hiring, retention, and supervision claim.

[5] The City further cites Cardona v. Cruz, 271 A.D.2d 221, 222, (N.Y. App. Div. 2000), and several other short Appellate Division decisions for the proposition that a negligent retention or supervision action does not lie where an employee is not either 1) acting within the scope of employment or 2) under the employer's control.

Plaintiff has introduced no evidence showing that Sanchez had a history of violence toward co-workers or sexual harassment prior to his hiring in 1992. Since Plaintiff has failed to produce evidence of a propensity of which the City could have known at the time of Sanchez's hiring, the Court grants the City's motion for summary judgment with respect to the negligent hiring cause of action. However, Plaintiff has proffered evidence indicating that the City had actual notice that Sanchez "had been accused of engaging in[] sexual misconduct." Ehrens, 385 F.3d at 235.

Prior to the events giving rise to the instant case, Police Officer Yvette Camarena, one of Sanchez' subordinates, filed numerous complaints alleging facts similar to those alleged in the instant case: that Sanchez repeatedly made unwanted sexual advances; used rank to ensure Camarena worked the same shifts and in close proximity to Sanchez; and used rank to retaliate against Camarena for refusing to acquiesce to Sanchez's sexual overtures. (Plaintiff's Exh. G, at ¶¶ 51-53.) On December 3, 2004, Camarena filed a complaint with the NYPD Office of Equal Employment Opportunity alleging, inter alia, sexual harassment by Sanchez. (Id. at ¶ 50.) Camarena filed an EEOC complaint on March 17, 2005, and filed an amended EEOC complaint on August 18, 2005. (Id. at ¶¶ 60-61.) On November 17, 2005, the EEOC sent Camarena and the NYPD a Notice of Right to Sue. (Id. at ¶ 8.) On February 17, 2006, Camarena filed suit in federal court against, inter alia, the City, the NYPD, and Sanchez, alleging that Sanchez's harassment violated state and federal law. (Id. at ¶ 1.) Camarena further alleged that Sanchez's supervisor-subordinate relationship with her became notorious and was not properly investigated or cabined. (Id. at ¶¶ 48, 55-56.) This evidence is sufficient to establish that the City knew that Sanchez had been accused of engaging in sexual misconduct towards his subordinates and thus,

to raise a genuine issue of fact as to whether the City should have perceived a propensity to abuse subordinates as to which the City should have taken remedial or protective action.

The City further contends that it is entitled to summary judgment because Plaintiff has not made a prima facie showing that the City's negligent supervision and/or retention was the proximate cause of Plaintiff's harm. However, a genuine issue of material fact exists as to causation and precludes summary judgment on this ground. The City has provided no evidence that it investigated Officer Camarena's complaints against Sanchez, or took any other action. Sanchez received no discipline, nor was Sanchez required to complete any additional training or supervised more closely. (City's Exh. D.) Given the considerable similarities between Plaintiff's allegations and Officer Camarena's complaints, and the timing of those complaints in relation to the harassment and abuse of which Plaintiff complains, the question of whether the City's action or inaction with regard to Sanchez was the proximate cause of Plaintiff's injuries cannot be resolved as a matter of law. Summary judgment will therefore be denied as to the negligent retaliation and supervision claim.

## CONCLUSION

For the foregoing reasons, the City's motion for summary judgment is granted with respect to Plaintiff's state-law assault and battery claim (Count IX), insofar as that claim is premised on events predating February 21, 2007, by more than 90 days, and with respect to the negligent hiring aspect of Count XI of the Complaint. The City's motion for summary judgment is denied in all other respects.

This Memorandum Opinion and Order resolves docket entry no. 68. A Final Pretrial Conference is scheduled for Friday, October 12, 2012, at 2:00 p.m. in Courtroom 11C.

SO ORDERED.

Dated: New York, New York
August 15, 2012

LAURA TAYLOR SWAIN
United States District Judge